IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. 1:13-CR-346-SS |
| v. | ) | |
| | ) | |
| MICHAEL BAKER | ) | |
| Defendant. | ) | |

**SEC'S MOTION TO QUASH BAKER'S SUBPOENA ON SEC ATTORNEY JAMES ETRI TO PRODUCE SEC DOCUMENTS**

The Securities and Exchange Commission ("SEC" or "Commission") moves to quash defendant Baker's subpoena issued to James E. Etri, an SEC Enforcement Division attorney, to produce SEC documents at trial on August 7, 2017. Defendant Baker has requested Etri to produce "all documents . . . relating to the SEC's investigation of ArthoCare…. [and] include the [SEC] 'action memoranda'."[1] Baker's subpoena fails to satisfy the Fed. R. Crim. P. 17(c) requirements of relevancy, admissibility and specificity. The documents requested contain SEC investigative and civil trial strategy and, as the Court previously ruled with respect to Commission action memoranda, are protected from disclosure by privileges, including the attorney-client and deliberative process privileges and the attorney work- product doctrine.

We are apprised that the Department of Justice has included Etri on its list of potential witnesses at trial. Baker may have issued his Rule 17(c) subpoena in response to that designation. We do not know whether the prosecution will actually call Etri as a witness at trial. Unless and until that happens, the documents requested by defendant Baker are irrelevant and inadmissible, as well as privileged. Thus, the Court may wish to hold this motion to quash in abeyance. If the Department of Justice informs the Court that it intends to call Etri, the Court

---

[1] Subpoena attached as Ex. 1 (the "subpoena" or "Baker subpoena").

can then consider not only the legal standard applicable to a Rule 17(c) subpoena, but also the requirements of the Jencks Act, 18 U.S.C. 3500, which requires a determination of which of the documents, or portions thereof, constitute a "statement . . . of the witness" and whether any such "statement" "relates to the subject matter as to which the witness has testified." 18 U.S.C. 3500(b), (e).  The Court could then consider the applicability of the Commission's privileges to disclosure of any such "statement," while also assessing whether any of the documents responsive to Baker's broad subpoena, including those received but not written or adopted by Etri, are relevant and admissible and should be produced.

## I.     FACTUAL BACKGROUND

James Etri is the Assistant Regional Director in the Division of Enforcement in the SEC's Fort Worth Regional Office (FWRO).   Etri led the SEC Enforcement Division team on the ArthroCare investigation. Etri has been actively involved in all aspects of that investigation.   Ex. 2, Etri Decl., ¶2 ("Etri Decl.").   As a result of that investigation, the SEC instituted a settled administrative proceeding against ArthroCare. *Id*. at ¶3.   The SEC also brought two related civil actions. *Id*. at ¶¶4-5. One of those actions is stayed before this Court pending the resolution of this criminal case. *Id.* at ¶5.   Etri has appeared as SEC counsel in all these civil actions both resolved and pending since August 2008.  *Id.* at ¶¶2-5.

DOJ also investigated ArthroCare, and the SEC provided to DOJ the investigative files it produced to Baker and co-defendant Gluk in the Commission's civil case. *Id.* at ¶7.  In addition, the SEC provided to DOJ three factual memoranda summarizing information it gathered. (Collectively "SEC Memoranda to DOJ") *Id.* at ¶8.  Previously, DOJ provided those SEC factual memoranda to defendant Baker.  *See, e.g.,* Dkt. 139,  Exs. A-D.

The SEC's internal action memoranda, which are referred to as "Action Memos," are confidential legal memoranda that SEC investigative staff in the Division of Enforcement

prepare for the Commissioners of the SEC recommending whether the SEC should authorize an investigation, the initiation of a civil action in federal court, the initiation of an administrative proceeding, or the settlement of either a court action or administrative proceeding. Etri. Decl.¶¶9-10. This Court already has ruled, in the context of quashing a Rule 17(c) subpoena issued by former co-defendant Gluk, that the SEC Action Memos in the ArthroCare investigation are privileged, stating that: "There are four "Action Memos" relevant to the SEC's investigation of ArthroCare. All four are unquestionably protected by the attorney-client privilege, as well as the work-product doctrine." Dkt. 200 at 3. The Court further stated: "[T]he factual basis underlying the SEC's investigation, and therefore the Action Memos themselves . . .  has . . . been given to the Defendants. The only additional information Gluk could glean from the Action Memos is insight into the SEC's legal analysis and decisionmaking process, none of which is relevant to his defense." *Id.*  On July 20, 2017, this Court held that under *Brady*[2], if Etri were to be called as a witness by the Government, "any relevant SEC action memoranda-… [should be] sealed and disclosed to the Court for *in camera* review prior to Etri's testimony." Dkt. 483 at 1-2.

Other than the Action Memos on ArthroCare, Baker's Rule 17(c) subpoena does not specifically identify or describe the contents of the documents he seeks; nor does Baker identify the relevant time period. The subpoena sweepingly asserts that its request for "all documents . . . relating to the SEC's investigation of ArthoCare" including "information in the possession of attorneys, investigators, police officers, federal agents and investigators, or other persons."  None of the SEC privileged documents potentially responsive to the Rule 17(c) subpoena have been disclosed outside the SEC. Etri Decl.  ¶13.  In the parallel civil case, the SEC produced its non-privileged documents in the Arthrocare investigative file to Baker.  Etri. Decl. ¶6.

---

[2]      *Brady v. Maryland*, 373 U.S. 83 (1963).

Etri has conducted a focused search for documents responsive to Baker's subpoena.[3] *Id.* at ¶12. The documents Etri has identified fall generally within four categories: (1) four SEC Action Memos, plus drafts of these Action Memos (and Action Memos from un-related SEC cases which were in the ArthroCare file), which provide legal analysis and attorney opinions, reveal internal pre-decisional agency deliberations and commentary among various SEC offices and divisions, and contain attorney-client communications; (2) internal memoranda by SEC legal staff and those acting under their direction detailing the progress and status of the investigation, including legal and factual analysis and strategy for the investigation and anticipated litigation; (3) internal memoranda, such as travel request authorizations and other documents required for administrative compliance, in which SEC attorneys and those acting under their direction report the progress and status of the investigation and include  legal analysis, attorney opinions and strategy, and also discuss  various timing matters relating to the investigation; and  (4) internal memoranda by SEC staff acting at the direction of SEC attorneys providing technical financial analysis for the investigation. Etri Decl.  ¶13.  In addition, Etri located interrnal emails of SEC attorneys and staff attaching these four categories of memoranda, which often also contain discussion of the particular memoranda attached.  *Id.* (Collectively, these four categories and the emails are "SEC Investigative Memoranda"). *Id.*

## II.    ARGUMENT

### A.    <u>The Subpoena Should Be Quashed Because Baker Cannot  Clear the Supreme Court's *Nixon* Hurdles for Rule 17 Subpoenas.</u>

Rule 17(c)(2)  provides that  "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."   "Rule 17(c) was not intended to provide an additional means of discovery" in criminal cases.  *Bowman Dairy Co. v.*

---

[3]  Because Baker's subpoena is so broad in scope, Etri cannot represent that he has located all responsive SEC documents.  Etri Decl.  ¶¶ 12-13.

*U.S.*, 341 U.S. 214, 220 (1951). A Rule 17(c) subpoena is not to be used as a discovery device. *See U.S. v. Nixon*, 418 U.S. 683, 698-99 (1974). To ensure that a Rule 17(c) subpoena is not used for discovery, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id.* at 700; *see U.S. v. Arditti*, 955 F. 2d 331, 346 (5th Cir. 1992); *U.S. v. Wilmington Trust Corp.*, 2017 WL 2960508, at *2 (D. Del. July 11, 2017) (quashing Rule 17(c) subpoena issued to non-party, the Federal Reserve).

Baker cannot surmount any of these hurdles. As to relevancy, unless Etri testifies – and very likely even then, Defendant has not shown that the factual and legal analysis of SEC attorneys, based on the evidence then available to them, are relevant to the charges against him in this criminal case, which is predicated upon the Department of Justice's own investigation, which included grand jury subpoena authority. Defendant also has not established that because the SEC, based on its evidence then, determined to not bring a particular securities civil action against defendant Baker has any bearing on issues that may be in dispute in his criminal case. The SEC's internal evaluations do not, in this criminal case, fall within the standard of Fed.R.Evid. 401 of tending to make a fact "of consequence in determining the action" "more or less probable than it would be without the evidence." *See U.S. v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981).

And even if the internal analyses of SEC attorneys were somehow relevant, they ought not be admissible in this criminal case. As shown below, the SEC documents are protected by the Commission's legal privileges, including the attorney-client and the deliberative process privileges, and the attorney work-product doctrine. If the materials subpoenaed are inadmissible, they may not be obtained by a Rule 17(c) subpoena as a matter of law. *See U.S. v. Mackey*, 647 F.2d 898, 901 (9th Cir. 1981); *U.S. v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir.

1981).

Baker similarly fails the specificity hurdle, as his sweeping subpoena amounts to the prototypical "fishing expedition." *See U.S. v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006); *U.S. v. Morris,* 287 F. 3d 985, 991 (10th Cir. 2002); *U.S. v. Carriles*, 263 F.R.D. 400, 402 (W.D. Tex. 2009)("[r]equesting entire files instead of specific documents is indicative of a fishing expedition" ). Other than the Action Memos, Baker's subpoena neither specifically identifies the documents sought nor does it describe them. Instead, Baker demands "all documents, such as memoranda written and received by Mr. Etri, relating to the SEC's investigation of ArthroCare up to the filing of the SEC's original complaint." Ex. 1, Attach. A.  His subpoena does not define the terms "documents" or "memoranda" other than to say each word "shall be given its usual and customary dictionary definition." *Id.*   Further, Baker instructs Etri to produce not just what is in his possession, custody or control as an SEC employee, but to also "include information in the possession of attorneys, investigators, police officers, federal agents and investigators, or other persons." Ex. 1, Attach. A, ¶ 1.

**B.      The Subpoena Should Be Quashed Because It Seeks Privileged Materials.**

Baker's subpoena seeks privileged materials (and documents that already have been produced).  A Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter." *U.S. v. Reyes*, 239 F.R.D 591, 598 (N.D. Cal. 2006) (citation omitted); see *also U.S. v. Klein,* 2017 WL 782326 at *5 (E.D. NY 2017); *U.S. v. Tomison*, 969 F.Supp. 587, 597 (E.D. Cal. 1997).  Disclosure of the requested privileged documents would have a substantial chilling effect that would impair the Commission's decisionmaking process.  Etri Decl.  ¶¶ 17-19.

**1.      The Attorney-Client Privilege Protects the Requested Documents.**

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of

obtaining or providing legal advice." *U.S. v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The Action

Memos were prepared by SEC attorneys to advise their client — the Commission — on a

continuing investigation and potential litigation, and they reflect confidential client

communications, and are therefore protected from disclosure by the attorney-client privilege.[4] *See*

*Klein*, 2017 WL 782326 at*1-4 (action memo privileged under attorney-client and deliberative

process privileges); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997) (internal memo

from SEC staff to Commissioners attorney-client privileged); *SEC v. Merkin*, 2012 WL 2568158,

*1 (S.D. Fla. June 29, 2012) (action memo protected by attorney-client privilege); *SEC v. World-

Wide Coin Invs.*, Inc., 92 F.R.D. 65, 67 (N.D. Ga. 1981) (same). The attorney-client privilege is

absolute and cannot be overcome even by a showing of need. *Westinghouse Elec. Corp. v. Repub.

of the Phil.*, 951 F.2d 1414, 1429 (3rd Cir. 1991) (attorney-client privilege is an absolute

protection); *Arcuri v. Trump Taj Mahal Ass'n*, 154 F.R.D. 97, 105 (D.N.J. 1994) (same).

      **2.**      **The Attorney Work-Product Doctrine Protects The Responsive Documents.**

      The work-product doctrine provides attorneys with a zone of privacy within which to

represent their clients free from intrusion by opposing parties and counsel. *See Hickman

v.Taylor*, 329 U.S. 495, 510-11 (1947); *In re Grand Jury Subpoena*, 357 F.3d 900, 910 (9th Cir.

2004). The doctrine protects documents and materials reflecting an attorney's work- product,

including "interviews, statements, memoranda, correspondence, briefs, mental impressions,

personal beliefs, and countless other tangible and intangible" items. *U.S. v. Nobles*, 422 U.S.

225, 237 (1975) (*quoting Hickman,* 329 U.S. at 510-11). This "privilege applies to preparation

not only by lawyers but also by other party representatives including, for example, investigators

---

[4]  Statements containing factual information from the Action Memos were provided to the Department of Justice, which produced them to defendants. These statements were addressed in the Fifth Circuit's opinion resulting in a new trial. The Action Memos have not been produced to the Department of Justice. Etri Decl. ¶13.

seeking factual information." *In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156,

161 (2d Cir. 2002); *see also Nobles*, 422 U.S. at 238 (work-product protects documents prepared

by attorney's agent). The work-product doctrine protects documents containing both facts and

opinions. *See, e.g.*, Fed. R. Civ. P. 26(b)(3) (protected work-product is not limited to "the mental

impressions, conclusions, opinions, or legal theories of an attorney or other representative of a

party concerning the litigation"). Where work product sets forth an attorney's legal analysis and

legal opinions, it warrants the highest degree of protection. The legal opinions of attorneys

"enjoy[] a near absolute immunity." *See P. & B. Marina, Ltd. P'ship v. Logrande,* 136 F.R.D. 50,

57 (E.D.N.Y. 1991) (citation omitted); *see also Williamson v. Moore*, 221 F.3d 1177, 1182 (11th

Cir. 2000).

      The SEC Investigative Memoranda contain attorney work-product, including analysis of

factual and legal issues, developed in anticipation of litigation and to further the SEC ArthroCare

investigation. These SEC Investigative Memoranda include emails and attached internal

memoranda (some are draft Action Memos) prepared by SEC staff and advancing the SEC's

investigation, analysis, and anticipated future civil litigation.   Thus, these SEC Investigative

Memoranda are protected by the attorney work-product doctrine. Etri Decl. ¶¶ 13-20.

      In particular, the SEC Action Memos and drafts thereof are work-product because they

are confidential, internal documents drafted by SEC attorneys and staff working under their

direction in anticipation of litigation against ArthroCare and its executives. The Action Memos

contain the attorneys' analysis of both factual and legal issues.  *Id*.  at ¶¶9-20.  While all parts of

the Action Memos are work-product, the portions that contain legal analysis are the type of work

-product that warrants heightened protection.  *SEC v. Somers*, 2013 WL 4045295, at *2 (D. Kan.

Aug. 8, 2013) (SEC action memo and related documents "are created in anticipation of litigation,

and at the very least, the attorney work product privilege protects them"); *accord Merkin*, 2012 WL 2568158, at *1 (holding SEC action memo is "attorney work product material—the most-protected type of work product, rarely subject to a disclosure order"); *SEC v. Nacchio*, 2007 WL 219966, at *7 (D. Colo. Jan. 25, 2007) (documents and action memo privileged); *SEC v. Cavanaugh*, 1998 WL 132842, at *2 (S.D.N.Y. Mar. 23, 1998) (documents privileged where prepared by attorneys determining whether to recommend enforcement action).

###    3.    The Deliberative-Process Privilege Protects the Requested Documents.

To withhold information under the deliberative-process privilege, an agency must show the information is deliberative and predecisional.[5] *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975); *Tax Analysts v. IRS*, 294 F.3d 71, 80 (D.C. Cir. 2002). The deliberative-process privilege protects "the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir.1988) (citation omitted). Generally, the purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. *Hopkins v. HUD,* 929 F.2d 81, 84 (2d Cir. 1991) (document is predecisional when prepared for assisting an agency decision-maker to make a decision).[6]

The SEC Investigative Memoranda are protected by the deliberative-process privilege

---

[5]  Accompanying this motion are declarations from Brent J. Fields, Secretary of the Commission (Ex. 3) ("Fields Decl."), and James Etri, (Ex. 2), asserting and explaining the bases for deliberative process and the other applicable privileges. The SEC has delegated the authority to formally assert governmental privileges to the Associate General Counsel for Litigation and Administrative Practice, currently Richard M. Humes. (Fields Decl.¶5). Mr. Humes has personally reviewed the SEC Investigative Memoranda and has determined that they are protected by the deliberative-process privilege. (Fields Decl. ¶¶6-7).

[6]  *See also Nat'l Council of La Raza v. DOJ,* 411 F.3d 350, 356 (2d Cir. 2005) (deliberative-process privilege protects advisory opinions, recommendations, and deliberations); *Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002) (deliberative-process privilege protects "recommendations, draft documents, proposals, suggestions," and documents reflecting writer's opinions rather than the agency's policy).

because they reflect pre-decisional deliberations within the SEC regarding potential charges

against Baker and others as well as staff views as to the appropriate course of the investigation.

Drafts of Action Memos are similarly deliberative because they reflect internal pre-decisional

discussion and commentary between and among SEC staff members.  Etri Decl. ¶¶9-20.

## CONCLUSION

For the reasons stated above, Baker's trial subpoena to SEC attorney James Etri for SEC

documents should be quashed.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/  Juanita C. Hernandez
Juanita C. Hernandez
Texas SBN 09518700
Office of the General Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
Main Tel.:      202 / 551-5140
Direct Tel.:    202 / 551-5152
Fax:            202 / 772-9263
Email:          HernandezJ@sec.gov

Attorney for
United States Securities and Exchange Commission

</div>

**Certificate of Conference**

Pursuant to Western District of Texas Local Rule CV-7(i) and the Texas Lawyer's Creed, I hereby certify that before filing this Motion to Quash the undersigned counsel conferred in good faith to try to resolve the issues raised by this motion with Defendant Baker's counsel Martha Boersch.  Counsel could not come to an agreement.

<div align="right">

/s/  Juanita C. Hernandez
Juanita C. Hernandez

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Western District of Texas, using the CM/ECF system, which will send notification of the filing to all CM/ECF participants in this matter.

<div align="right">

/s/  Juanita C. Hernandez
Juanita C. Hernandez

</div>