IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED
17 OCT 26 PM 12: 12
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
       DEPUTY CLERK

**UNITED STATES OF AMERICA**

-vs-

**MICHAEL BAKER (1)**

CAUSE NO. A-13-CR-346-SS

## **AMENDED ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Michael Baker (Baker)'s Motion for Judgment of Acquittal [#556] and the United States of America (the Government)'s Response [#557] in opposition. Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and order.

### Background

Baker, the former President and Chief Executive Officer (CEO) of ArthroCare Corporation (ArthroCare), was indicted and charged in a fifteen-count Superseding Indictment with conspiracy to commit wire and securities fraud, substantive wire and securities fraud, and making false statements to the United States Securities and Exchange Commission (SEC).

Before the trial, Baker filed a motion to dismiss the wire fraud counts. Mot. Dismiss Counts [#465]. Baker argued the Government failed to properly allege wire fraud in violation of 18 U.S.C. § 1343 because the Government did not allege Baker "personally acquire[d]" property as a result of the fraud. *See id.* at 1. The Court denied Baker's motion, stating:



> Baker cites no case directly holding a defendant charged with wire fraud must be alleged to have personally obtained property from the victims of the scheme. The Government has properly alleged in the Superseding Indictment that Baker devised and executed a scheme to defraud investors of money through misrepresentation about the success of ArthroCare. *Compare* Superseding Indictment [#141] at 11–13[,] *with* Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2015);

Order of July 20, 2017 [#483] at 1.

In a two-week criminal trial, beginning August 7, 2017, and concluding August 17, 2017, Baker was tried before a jury in this Court. On August 18, 2017, the jury unanimously found Baker guilty of one count of conspiracy to commit wire fraud and securities fraud, seven counts of wire fraud, two counts of securities fraud, and two counts of making false statements. Verdict [#535].

At the close of evidence, Baker moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the Court denied. Baker now reurges that motion.

**Analysis**

**I.    Motion for Judgment of Acquittal—Legal Standard**

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)). In fact, "[t]he only proper basis for a motion for judgment of acquittal is a challenge to the sufficiency of the government's evidence." *Id.* (quoting 9A Fed. Proc., L.Ed. § 22:1433 (2006)).

In analyzing a motion under Federal Rule of Criminal Procedure 29, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S.

307, 319 (1979)) (emphasis in original). The Court need not "analyze the evidence with an eye toward negating every possible inference of innocence, rather, if the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio*, 428 F.3d at 522.

## II. Application

In seeking a judgment of acquittal, Baker argues (1) "the [G]overnment's evidence was insufficient on one or more elements for each count of conviction to prove guilt beyond a reasonable doubt" and (2) the Government failed to prove the "obtain property" element of the conspiracy, wire fraud, and securities fraud counts. Mot. Acquittal [#556] at 1–2. The Court examines each of these arguments in turn.

### A. General Insufficiency

Although Baker makes a broad statement the Government's evidence was insufficient for each count, Baker articulates no reason why the Government's evidence was insufficient or on what elements the Government failed to prove guilt beyond a reasonable doubt. *See id.* The Court thus evaluates Baker's broad claim of general insufficiency.

Considering the evidence in the light most favorable to the jury's verdict, the Court finds the jury had sufficient evidence to find Baker guilty of one count of conspiracy to commit wire fraud and securities fraud, seven counts of wire fraud, two counts of securities fraud, and two counts of making false statements. Witnesses John Raffle, David Applegate, and Michael Gluk (the co-conspirators) all testified Baker directed a scheme to mislead ArthroCare's investors about the financial condition of the company to inflate the value of ArthroCare's shares. In executing this scheme, Baker and his

co-conspirators manipulated and misrepresented ArthroCare's revenue as well as concealed the nature and significance of ArthroCare's relationship with its distributors and with DiscoCare.

In addition, the evidence at trial showed Baker did more than simply direct his colleagues to manipulate revenue. A reasonable juror could have found Baker repeatedly and intentionally lied to investors about ArthroCare's earnings and revenues through inaccurate public filings, conference calls with investors, and direct email. Likewise, a rational trier of fact could have found Baker knew the revenue and earnings he reported were false because he led and participated in efforts to inflate these numbers.

When Baker's scheme began to unravel, Baker was deposed by the SEC on November 18, 2009. Based on the evidence presented at trial, a reasonable juror could have concluded Baker lied about the nature of ArthroCare's relationship with DiscoCare and his role in using DiscoCare to manipulate ArthroCare's earnings and revenues. Similarly, a reasonable juror could have concluded Baker lied when he stated the price ArthroCare paid to acquire DiscoCare, $25 million, was not related to the $25 million termination fee in ArthroCare's contract with DiscoCare.

In sum, the Court finds the evidence was overwhelming such that a rational jury could conclude beyond a reasonable doubt Baker willfully participated in a conspiracy to commit wire fraud and securities fraud, committed both wire fraud and securities fraud, and made false, material statements to the SEC he knew to be false. Therefore, Baker's argument the Government's evidence was insufficient to prove guilt beyond a doubt is without merit.

### B.     No Requirement to Personally Obtain Property

The vast majority of Baker's motion for judgment of acquittal reasserts and expands Baker's prior argument the Government must prove "the goal of the defendant's scheme is that the defendant

acquires something that the victims gives up." *See* Mot. Acquittal [#556]; *see also* Mot. Dismiss Counts [#465].[1] In urging acquittal, Baker contends the Government failed to meet that burden. Although the Court previously rejected Baker's attempt to reinterpret the wire fraud statute, the Court once again rejects Baker's arguments.

> The federal wire fraud statute provides, in relevant part:
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, . . . , transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. To prove a violation of the wire fraud statute, the Government must establish:

> (1) That the defendant knowingly devised or intended to devise any scheme to defraud;
> (2) That the scheme to defraud employed false material representations;
> (3) That the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing or sound for the purpose of executing such scheme; and
> (4) That the defendant acted with a specific intent to defraud.

Fifth Circuit Pattern Jury Instruction 2.57 (5th Cir. 2015). Similarly, the federal securities fraud statute states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice–
>
> (1) to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)); or

---

[1] In his motion to dismiss the wire fraud counts before trial, Baker argued the Government failed to allege he acquired property from his victims only for the wire fraud charges. *See* Mot. Dismiss Counts [#465]. Baker has now inexplicably expanded his argument to contend the wire fraud, securities fraud, and conspiracy counts include an obtain property element. *See* Mot. Acquittal [#556] at 1–2.

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d));

shall be fined under this title, or imprisoned not more than 25 years, or both.

18 U.S.C. § 1348. To prove a violation of the securities fraud statute, the Government must show:

(1) That the defendant knowingly devised or intended to devise any scheme to defraud;
(2) That the scheme to defraud employed false material representations;
(3) That the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing or sound for the purpose of executing such scheme; and
(4) That the defendant acted with a specific intent to defraud.

*See* Fifth Circuit Pattern Jury Instruction 2.57.[2]

As support for his argument wire fraud and securities fraud require proof a defendant directly acquired property from a victim, Baker predominately relies on three United States Supreme Court cases. *See* Mot. Acquittal [#556] (relying on *Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *Sekhar v. United States*, 133 S. Ct. 2720 (2013); and *Skilling v. United States*, 561 U.S. 358, (2010)); Mot. Dismiss Counts [#465] (relying on the same authorities). However, as the Court previously determined, these cases are inapplicable here. *See* Order of July 20, 2017 [#483] at 1 ("Baker cites no case directly holding a defendant charged with wire fraud must be alleged to have personally obtained property from the victims of the scheme.").

---

[2] The Court adapted the Fifth Circuit's pattern jury instruction for wire fraud in interpreting the securities fraud statute.

In *Honeycutt*, the Court held a defendant may not be held jointly and severally liable for property a co-conspirator derived from the crime but the defendant himself did not acquire. 137 S. Ct. at 1631–33. The Court examined a federal statute mandating forfeiture "of any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug crimes. *Id.* at 1630 (quoting 21 U.S.C. § 853). Simply put, limiting forfeiture to the property a defendant personally obtained from a drug crime in no way requires the Government to prove a defendant charged with wire fraud or securities fraud directly obtained property from a victim.

*Sekhar* is likewise irrelevant. In that case, the Court held attempting to compel a person to recommend that his employer approve an investment did not constitute "obtaining property from another" for purposes of extortion under 18 U.S.C. § 1951(b)(2). *Sekhar*, 133 S. Ct. at 2726. In particular, the Court found a recommendation to approve was not obtainable property. *Id.* at 2726–27. At no point in *Sekhar* did the Court examine the issue of whether there needed to be proof the defendant sought to personally acquire property from a victim. *See id.*

Baker cites *Skilling* for the idea a fraud victim's loss of money or property must be the "mirror image" of the defendant's gain. Mot. Acquittal [#556] at 3. Baker misconstrues *Skilling*. The Court in *Skilling* merely commented that traditional fraud features a bilateral relationship—one between the offender and the victim—while the honest-services theory concerns a trilateral relationship between bribe-giver, bribe-recipient, and betrayed party. *See Skilling*, 561 U.S. at 400. *Skilling* did not interpret wire fraud or securities fraud to require proof the defendant sought to personally acquire money or property from the victim. *See id.*

In contrast to the irrelevant citations offered by Baker, the Government points to *United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010). Resp. Mot. Acquittal [#557] at 6. In *McMillan*, the Fifth Circuit held the indictment sufficiently charged mail fraud where defendants' scheme to obtain money was one to "defraud the victim insofar as victims were left without money that they otherwise would have possessed." 600 F.3d at 449. As a result, in a scheme to defraud the focus is on depriving a victim of property for some benefit; precedent imposes no requirement that a defendant must directly gain or possess said property. *See id.*

At trial, substantial evidence was presented to show the misleading and fraudulent statements made by Baker induced investment in ArthroCare. Baker's co-conspirators testified the purpose of the scheme was to attract investment through inflated earnings per share. Testimony also suggested the scheme was intended to enrich Baker and his co-conspirators through bonuses and the appreciation of their own ArthroCare stock and stock options. In particular, evidence produced at trial showed Baker significantly benefitted from the scheme as he received high compensation, collected performance bonuses, and profited from the sale of his personal stock in ArthroCare.

Additionally, various analysts and investors testified they would not have invested in or recommended investing in ArthroCare if they had known the true state of ArthroCare's earnings and its relationship with DiscoCare. These same analysts and investors further testified they lost millions of dollars because of Baker's scheme.[3] Thus, viewing the evidence in the light most favorable to the

---

[3] Results in two of the Court's prior cases also demonstrate the extent to which Baker's misconduct deprived his victims of property. First, in the related securities class action, investors alleged ArthroCare, Baker, and others made false and misleading statements to the investing public. *See In re Arthrocare Corporation Securities Litigation*, No. 1:08-CV-00574 (W.D. Tex. filed July 25, 2008). In settling the securities class action, ArthroCare paid $74 million into a settlement fund for distribution. A total of 8,220 class members submitted claims to the settlement fund for losses suffered as result of the alleged—now proven—misconduct. 1,616 claims were found to be invalid for technical reasons, and 3,573 claims were calculated to have zero recognized loss. A total of 3,031 claims were recognized as valid. After payment of attorneys' fees, court costs, and claims administrator expenses, $54.1 million was distributed to the class

prosecution, the Court concludes a rational trier of fact could have found the goal of the scheme conducted by Baker and his co-conspirators was to deprive investors of money they otherwise would have possessed.

## Conclusion

Because the Court finds the jury was presented with sufficient evidence to support the verdict reached, the verdict must be upheld.

Accordingly:

IT IS ORDERED that Defendant Michael Baker's Motion for Judgment of Acquittal [#556] is DENIED.

SIGNED this the 26th day of October 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

members. The average payment was approximately $17,800. Second, a shareholder derivative suit brought against Baker and others also settled. *See Weil v. Baker et al.*, No. 1:08-CV-00787 (W.D. Tex. transferred Oct. 22, 2008). The insurers of Arthrocare's directors and officers agreed to pay Arthrocare $8 million, 16% of the approximately $50 million in costs Arthrocare incurred for internal investigations, financial restatement, and legal defense.