UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL BAKER, | § | No. 1:13-CR-346-DAE |
| | § | No. 1:21-CV-281-DAE |
| Petitioner, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |
| | § | |

ORDER (1) ADOPTING REPORT AND RECOMMENDATION,
(2) DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255, AND
(3) DENYING CERTIFICATE OF APPEALABILITY

Before the Court is a Report and Recommendation (the

"Recommendation" or "Report") on Petitioner Michael Baker's ("Baker") Motion

to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255

(Dkts. # 628; 629), filed by United States Magistrate Judge Mark Lane.

(Dkt. # 645.)  Baker has timely filed Objections to the Magistrate's

Recommendation.  (Dkt. # 646.)  Pursuant to Local Rule CV-7(h), the Court

finds this matter suitable for disposition without a hearing.  After careful

consideration, and for the reasons given below, the Court **ADOPTS** the

Magistrate Judge's Recommendation

(Dkt. # 645), **DENIES** Baker's § 2255 Motion to Vacate (Dkts. # 628; 629) and **DENIES** Baker a Certificate of Appealability.

<u>BACKGROUND</u>

The relevant factual and procedural background is discussed in the Report.  (<u>See</u> Dkt. # 645 at 1–7.)  Baker was indicted for wire fraud, securities fraud, making false statements to the SEC, and conspiracy to commit wire fraud and securities fraud.  <u>U.S. v. Baker</u>, 923 F.3d 390, 392 (5th Cir. 2019).  In June 2014, Baker was first tried and convicted on all counts.  On appeal, the Fifth Circuit vacated Baker's convictions on evidentiary grounds and remanded for a new trial.  At his second trial, the jury convicted Baker on twelve counts, acquitting him on two wire fraud counts and one false statement count. ID. at 395. The Trial court then (1) sentenced him to a 240-month term of imprisonment and five years of supervised release; (2) imposed an $1 million fine; and (3) ordered that he forfeit $12.7 million. <u>Id.</u>

Baker timely appealed.  Baker objected to the jury instructions on two grounds and moved for judgment of acquittal.  <u>Id.</u> at 403.  First, Baker argued the wire fraud statute imposes a "mirror image" requirement, such that a victim's loss or money or property directly led to the defendant's gain, i.e., that one is the mirror image of the other.  <u>Id.</u>  The Fifth Circuit rejected this argument.

Second, Baker argued that the jury instructions did not require the government to prove that he intended to obtain property form a victim, as required by the statute, but instead allowed for a conviction based on a scheme that was only intended to bring about financial gain to Baker, without directly obtaining money or property from any victim.  Id. at 403-404.  The Fifth Circuit rejected this argument and held the statute does not require intent to obtain property directly from a victim.  Id. at 404-05. The Fifth Circuit found the jury instructions allowed for a conviction if Baker intended to deceive the victims out of their money for his own financial benefit.  Id. 405.  The evidence showed that by inducing investments in ArthroCare, Baker's scheme affected the victims' property rights by wrongfully leaving them "without money that they would otherwise would have possessed. Id.  The Fifth Circuit also rejected all of Baker's other grounds for appeal and affirmed his conviction in its entirety. Id. at 407. The Supreme Court denied his petition for certiorari on March 30, 2020.  (Dkt. # 618.)

Baker timely filed his Section 2255 motion and reply, contending that Kelly v. U.S., 140 S. Ct. 1565 (May 7, 2020), issued after the Supreme Court denied his petition, drastically changed the law with respect to wire fraud.  (Dkt. # 646.)

On May 17, 2022, Magistrate Judge Mark Lane found Kelly did not demonstrably change the law with respect to wire fraud and summarily denied Baker's Section 2255 Motion.  (Dkt. # 645.)  According to the Magistrate Judge,

3

the facts of <u>Kelly</u> could not be more dissimilar to Baker's case, and <u>Kelly</u>'s holding that obtaining property must be the object, not merely an incidental consequence, of the scheme, does not give the court reason to question Baker's conviction. (Dkt. # 645 at 4–5.) Additionally, the Magistrate Judge found that Baker did not show he is entitled to a new sentencing hearing because the government's estimate of loss does not satisfy <u>Kelly</u> or due process. (<u>Id.</u> at 10–11.)

Next, the Magistrate Judge found that Baker in raising ineffective assistance of counsel did not expand on his argument other than setting forth the standard to prove ineffective assistance of counsel and conceded in his reply brief that "his lawyers repeatedly objected to the loss calculations in his case." (<u>Id.</u> at 10–13.) Accordingly, the Magistrate Judge found Baker has not shown that he is entitled to relief because he was denied effective assistance of counsel. Finally, the Magistrate Judge found that Baker did not show that an evidentiary hearing is warranted, has shown no cause to amend, and failed to describe what discovery he needs under Rule 6(a)[1] or why such discovery is necessary. (<u>Id.</u> at 13–14.) As a result, Judge Lane denied Baker's requests for an evidentiary hearing, leave to amend, and discovery. (<u>Id.</u>)

---

[1] Of the Federal Rules of Criminal Procedure or Civil Procedure.

Thus, the Magistrate Judge recommended that the Court deny Baker's

§ 2255 motion.  (Dkt. # 645 at 15.)  On May 31, 2023, Baker timely filed

objections.  (Dkt. # 646.)  The objections are discussed below.

<u>LEGAL STANDARDS</u>

I.    <u>Review of a Magistrate Judge's Report and Recommendation</u>

The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made.").  The objections must specifically identify those findings or

recommendations that the party wishes to have the district court consider.

<u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider

"[f]rivolous, conclusive, or general objections."  <u>Battle v. United States Parole

Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de

novo review; the Court need only determine whether the Report and

Recommendation is clearly erroneous or contrary to law.  <u>United States v. Wilson</u>,

864 F.2d 1219, 1221 (5th Cir. 1989).

II.      Motion for Relief Pursuant to 28 U.S.C. § 2255

        Section 2255 "provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial court." Kuhn v. United States, 432 F.2d 82, 83 (5th Cir. 1970). "The statute establishes that a prisoner in custody under a sentence of a court established by Congress 'may move the court which imposed the sentence to vacate, set aside or correct the sentence.'" United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004) (quoting 28 U.S.C. § 2255). "Where there has been a 'denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.'" Id. (quoting 28 U.S.C. § 2255).

        "There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996) (quoting 28 U.S.C. § 2255).

DISCUSSION

Baker objects to the Magistrate Judge's Recommendation on several

bases.  (Dkt. # 646.)  Baker first objects to the Recommendation's conclusions

regarding the impact that <u>Kelly v. United States</u>[2] had on his case, arguing that a

stock price is not property and that the Report fails to address what property Mr.

Baker obtained as part of his scheme.  (Id. at 5–6.)  Baker also objects to the

Report on the grounds that <u>Kelly</u> changes the Jury Charge that should have been

issued.  (<u>Id.</u> at 7–9.)  Next, Baker objects to the Magistrate's finding that <u>Kelly</u>

does not change his sentencing, arguing using a stock market loss in an intent to

obtain property prosecution cannot be squared with <u>Kelly</u>.  (Id. at 11–13.)

Baker objects additionally to the Report's recommendation for the Court to

not issue a Certification of Appeal.  (<u>Id.</u> at 1–5.)  Finally, Baker objects to the

Magistrate's finding that an evidentiary hearing was not warranted, stating expert

affidavits warrant a hearing.  (<u>Id.</u> at 9–10.)

Separately from these objections, Baker presents the recent Supreme Court

decision in <u>Ciminelli v. United States</u>[3] to the this Court as support for his argument

that the wire fraud statute reaches only traditional property interests, of which

---

[2] 140 S. Ct. 1565 (2020).

[3] No. 21-1170, 2023 WL 3356526 (May 11, 2023).

stock price is not one.  (Dkt. # 648.)  Baker therefore asks the Court to sustain his objections and grant relief pursuant to Ciminelli.

A.     Objection to Recommendations About Kelly's Impact on Baker's Case

Baker objects to the Magistrate Judge's conclusions about Kelly, arguing: (1) Kelly requires an intent to obtain property to prove wire fraud, stock price is not property, and the Magistrate Judge failed to address what property Baker obtained; (2) Kelly changes the Jury Charge that should have been issued in Baker's case; and, (3) Kelly alters Baker's sentencing because using a stock market loss in an intent to obtain property prosecution is not appropriate post-Kelly.

1.     Kelly's Requirement that Wire Fraud Must Include an Object to Obtain Property Does Not Alter Baker's Case

In his Recommendation, the Magistrate Judge stated that Kelly's holding "that obtaining property must be the object, not merely an incidental consequence of the scheme…does not give the court reason to question Baker's conviction" because the victims "were defrauded when they kept or purchased ArthroCare Stock because of Baker's false statements."  (Dkt. # 645 at 7–8.)  Since the scheme left victims "without money that they otherwise would have possessed," Baker's scheme had obtaining money as the object of the scheme, and Kelly affords Baker no relief.  (Id. at 10.)  Baker objects on the basis that the Government did not present evidence that he intended to obtain property by making statements to

induce individuals to invest.  (Dkt. # 646 at 5.)  Rather, Baker claims there was no

transfer of property or money to him, even if the investing public were to buy or

hold stock due to his claims.  (Id. at 6.)  Baker says that the Magistrate Judge failed

to address what property Baker sought to obtain, and therefore, the District Court

should find Kelly did materially change the law related to his offenses.  (Id.)

The Court overrules this objection.  Baker fails to establish that the

object of his scheme was not to obtain property.  He argues that his only object was

to "keep the stock price high for his own benefit, not to obtain money from

investors."  (Dkt. # 646 at 7.)  According to Baker, this reflects a "salary theory" of

fraud, and the Government needed to prove a property fraud to convict for wire

fraud after Kelly.  (Id.)  This misrepresents Baker's actions and the Government's

allegations at his trials.

Contrary to Baker's claims, the Government did argue, successfully, that

Baker made false statements to induce investors or potential investors to buy stock.

(Dkt. # 645 at 10 (quoting Baker, 923 F.3d at 405)).  Indeed, ArthroCare's stock

price "could not be fraudulently inflated without continued investment by investor-

victims."  (Dkt. # 651 at 5.)  The victim-investors' money was inherently an object

of Baker's fraud—he could not continue to reap the financial benefits of increased

stock price for ArthroCare without inducing victim-investors to buy stock to

continue to increase the stock price.  (Id.)  Wresting the victim-investor's money

from them was not an incidental byproduct of the scheme.  Baker actively put out false information to induce further investment and thereby part investors from their money.  Baker did not merely act with an intent to retain his salary. (Dkt. # 646 at 5.)  The Magistrate Judge was correct in finding the "salary-theory" cases that Baker cites in support of his claims are not applicable to his case. (Dkt. # 645 at 8–10.)  Additionally, since Baker acted to part victim-investors with their money, the Court rejects Baker's objection that he only impacted stock price and therefore did not act with the object to obtain money.  The Magistrate Judge was correct in finding Kelly and the salary theory cases do not afford Baker any relief. (Id. at 10.)

### 2.    Kelly and Baker's Jury Charge

The Magistrate Judge found that the Fifth Circuit's holding that Baker's jury instructions were not defective remains appropriate post-Kelly. (Dkt. # 645 at 10.) Baker objects, finding that the jury instructions given cannot be reconciled with Kelly. (Dkt. # 646 at 8.)  Baker argues (1) that the Report fails to address the salary-theory cases he presented in support of his claims and (2) that statements made that affect the secondary stock market pricing are no longer an intent to obtain property after Kelly. (Id. at 8–9.)  Finally, Baker argues the jury instructions needed to inform the jury that the scheme having an object to obtain money or property was an element of wire fraud, and the instructions did not do so.

This failure to instruct on an element of the offense, Baker argues, violated his Fifth and Sixth Amendment rights to have a jury find each element of the offense beyond a reasonable doubt. (Id. at 8.)

First, as discussed above, because Baker's scheme, as alleged by the Government, is inextricably linked not just to his salary but with parting investors with their money to increase stock prices, the salary-theory cases do not have any bearing on the outcome of Baker's case. The Magistrate Judge explained as much in his Report.  (Dkt. # 645 at 8–10.)  The Court overrules this objection.

Secondly, and in line with this, Baker did more than make statements that impacted the secondary stock market, so Kelly does not prevent him from being found guilty of wire fraud.  Rather than only aim to impact stock prices, Baker actively put out false information to induce further investment from investors. The stock prices could not have been inflated without increased investment by investors.  Obtaining investor's money was thereby an object of Baker's scheme, so Kelly does not afford Baker relief.

Finally, the Magistrate Judge agreed with the Fifth Circuit that Baker's jury instructions did include the intent to obtain the investor's money as an element of the crime, even if it was not explicitly phrased this way.  (Dkt. # 645 at 10.)  The Fifth Circuit held:

11

The jury instructions here allowed for a conviction if Baker intended to deceive the victims out of their money for his own financial benefit. The evidence at trial showed that Baker did just that: (1) He made false statements to investors and potential investors to induce them to hold onto or buy ArthroCare stock; (2) he knew the statements did not accurately reflect ArthroCare's business model or revenue projections; and (3) the scheme was intended to benefit Baker via bonuses and appreciation of his own stock options. By inducing investments in ArthroCare, the scheme affected the victims' property rights by wrongfully leaving them "without money that they otherwise would have possessed."

Baker, 923 F.3d at 405.  Baker intending to deceive the victims out of their money is, in every sense, Baker's scheme having the object of obtaining money or property from the victims.  Moreover, the Government proved at trial that Baker made false statements to induce investors to buy ArthroCare stock.  Id.  The scheme left victims "without money that they otherwise would have possessed." Id.  Baker's argument that the scheme involved only economic information or stock price is untenable when the Government alleged and proved at trial that a critical part of the scheme was to part victims with their money.

The Court dismisses Baker's objection regarding the Jury Charges and affirms the Magistrate Judge's finding that Kelly does not entitle Baker to a new trial because the jury was properly instructed about the offense, even considering Kelly.

12

3.   <u>Kelly and Baker's Sentencing</u>

In his report, the Magistrate Judge explained that technical application of

Sentencing Guidelines do not give rise to a constitutional issue cognizable under

Section 2255.  (Dkt. # 645 at 11 (citing <u>United States v. Walker</u>, 68 F.3d 931, 934

(5th Cir. 1995)).  "Relief under Section 2255 is reserved for transgressions of

constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal, and would, if condoned, result in a complete miscarriage of

justice." (<u>Id.</u> (citing <u>United States v. Vaugh</u>, 955 F.2d 367, 368 (5th Cir. 1992)).

As a result, Baker is afforded no relief from his concerns about the sentencing

guideline application under Section 2255.  (<u>Id.</u>)  Moreover, the Magistrate Judge

found that <u>Kelly</u> does not discuss any loss calculation related to sentencing, so

even if this was relief that could be granted under 2255, <u>Kelly</u> would afford no

such relief.  (<u>Id.</u>)

Baker objects, stating this was not just a guidelines objection but an

objection to the argument that the Government used for conviction based on

Baker's gain, when the sentencing determination relied upon market loss.  (Dkt. #

646 at 11.)  Baker states that the Report should have considered why Baker's gain

was not used in determining his sentence, especially since there was no specific

victim named in the Pre-Sentencing Report.  Baker argues that the District Court

did not consider that the actual gain to Baker should be the focal point in

13

determining his sentence, even when the evidence in the case clearly pointed to Baker having the intent to increase the value of the stock.  (Id.)  Rather, the District Court calculated loss and increased the offense level based on the amount of loss. Baker alleges the following errors in the District Court's loss calculations: (1) failing to measure inflation per share to a reasonable degree of certainty; (2) failing to account for when investors purchased their shares of ArthroCare; (3) incorrectly calculating that all ArthroCare shareholders could have avoided incurring losses; (4) incorrectly calculating that all investors who purchased ArthroCare shares after the scheme began were harmed equally; and, (5) ignoring benefits received by investors who both purchased and sold ArthroCare shares while the stock price was inflated by the scheme.  (Id.)  Finally, Baker argues that federal fraud statues do not address every type of deceit and must therefore be limited to fraud in which the acquisition of money or property is the purpose of the fraud. (Id. at 12.)  Baker maintains the purpose of his fraud was not acquisition of money or property. (Id.)

The Court dismisses this objection.  First, Baker fails to explain how this is more than an objection to how the District Court applied the Sentencing Guidelines in a way that would allow for this to be a cognizable issue under Section 2255. Secondly, even if this was a cognizable issue, as explained above, acquiring money was the purpose of Baker's fraud here.  Mr. Baker is not a regulator of the stock price.  As the Magistrate Judge explained, Baker's attempt to cast his acts as mere

stock price manipulation fails to recognize that the Government alleged and proved at trial that Baker intended to obtain money from victim-investors as part of this scheme.  (Dkt. # 645 at 11.)   <u>Kelly</u> affords Baker no relief.

B.   <u>Objection to Recommendation Not to Issue a Certificate of Appeal</u>

Baker, rather than explain his objection to the Magistrate Judge's recommendation not to issue a certificate of appeal, expounds that the Magistrate Judge misinterpreted <u>Kelly</u>'s impact on the law at hand.  (Dkt. # 646 at 1–5.)  He cites Judge Costa's dissenting opinion in <u>United States v. Durbin</u> to support his argument.  27 F.4th 1021 (5th Cir. 2022).

In <u>Durbin</u>, the Fifth Circuit cited <u>Kelly</u> to support "avoiding reading federal fraud statutes to criminalize all conduct that involves deception, corruption, abuse of power."  <u>Id.</u> at 1041 (quotation omitted).  Baker argues that <u>Durbin</u> rejects an expansive reading of sentencing enhancements, supporting his argument that his sentencing was inappropriate under <u>Kelly</u>.  (Dkt. # 646 at 1–3.)  Baker also argues that the Magistrate Judge found Kelly to be inapplicable outside of exercises of governmental regulatory power.  (<u>Id.</u> at 1.)

As explained in detail above, <u>Kelly</u> does not change Baker's sentencing, nor is application of sentencing guidelines an appealable issue under Section 2255.  Furthermore, that <u>Durbin</u> held that courts should not assign federal criminal statutes a "breathtaking" scope when a narrower reading is reasonable changes

15

nothing in Baker's case.  27 F.4th at 1041 (quoting <u>Van Buren v. United States</u>, 140 S.Ct. 1565, 1568 (2020)).  The Government alleged and proved at trial that Baker committed a scheme intended to part victims with their money.  (Dkt. # 645 at 8–10.)  Nothing about applying the wire fraud statute to Baker's crimes widens the scope of that statute, and certainly not to a breathtaking scope.  Baker's argument that <u>Durbin</u> makes clear that <u>Kelly</u> is not cabined to exercises of government regulatory power provides him no relief.

    C.    <u>Objections to Conclusion Declining Evidentiary Hearing</u>

    The Magistrate Judge found Baker failed to show an evidentiary hearing is warranted because his claims rest on the applicability of <u>Kelly</u> to his case. (Dkt # 645 at 13.)   Baker objects, arguing that the Report did not address the expert affidavits he submitted showing that the government's loss calculation for his sentencing was unreasonable and unreliable, the basis of a due process violation that deserves a hearing.  (Dkt. # 646 at 9–10.)

    In his Section 2255 Motion, Baker argued that under <u>Kelly</u>, the Government had to prove a measure of actual investor losses.  (Dkt. # 629.)  The Government admitted that it would be "near impossible" to prove actual loss, and the Government instead provided three different loss calculation figures to the district court for consideration at the sentencing hearings.  (<u>Id.</u> at 43–49.)  Baker argues that a defendant showing that a district court used unreliable information as the

basis for the sentence imposed is a due process violation, so the Report should have considered the expert affidavits he submitted as evidence that the government's loss calculation was unreliable.  (Dkt. # 646 at 9 (citing United States v. Christensen, 732 F.3d 1094, 1106 (9th Cir. 2013)).  He argues the Report should have found he is entitled to an evidentiary hearing to develop the record for this alleged due process violation.

The Court rejects this objection.  The Government presented the District Court with three different loss calculation options in the pre-sentencing report after being up-front that a precise loss calculation would be nearly impossible to obtain. The Government further presented an expert witness to support its loss calculations.  (Id.)   Baker cites a Ninth Circuit case for the proposition that a staggeringly large range between loss calculations cannot be said to be reasonably determined.  (Id. at 45 (citing United States v. Hussain, 2019 WL 1995764 (9th Cir. 2019)).  However, in that case, the range was a billion dollars, 1,000 million dollars.  The range estimates here varied by 750 million dollars total, three fourths of the range in Hussain.  (Id.)   Moreover, the range between two of the options was only 200 million dollars, a fifth of the range in Hussain, and the sentencing guidelines would not change between those two estimates.  Baker cited no other precedent explaining why this range was too large, why the loss calculation the District Court chose was inappropriate, or why his expert reports should be

17

weighed more heavily than the government's expert reports.  (Id. at 43–49.)
Moreover, the Magistrate Judge correctly found that Baker's objections to his
sentencing is based on Kelly's application to Baker's case, which requires actual
property loss caused by the defendant as the object of the fraud.  (Dkt. # 645 at 10–
13.)  Baker argued that this required a reexamination of loss in his case.  (Dkt. #
629 at 43.)  As explained above, Kelly has no bearing on Baker's case and does not
create a need to re-examine loss here.

        D.     Ciminelli v. United States

In a May 12, 2023 Advisory to the Court, Baker argues Ciminelli decides the
precise legal issue raised in his writ of habeas corpus.  (Dkt. # 648 at 2.)  The
Supreme Court in Ciminelli held: "[T]he wire fraud statutes reaches only
traditional property interests. The right to valuable economic information needed to
make discretionary economic decisions is not a traditional property interest."
Ciminelli v. United States, No. 21-1170, 2023 WL 3356526 at *5 (May 11, 2023).
Baker alleges he sought to obtain no traditional property interest, casting his
statements made to affect stock market pricing as the kind of economic
information Ciminelli discussed.  (Dkt. # 648 at 1.)  However, "Ciminelli did not
involve a victim parting with money based on material misrepresentations made
with an intent to defraud, which is a classic and well-recognized scheme to deprive
a person of a traditional property interest, namely money."  United States v.

Jesneik, No. 3:20-cr-228, 203 WL 3455638, at *2 (D. Or. May 15, 2023).  Rather,
Ciminelli addressed a scheme to award development projects in New York to
specific developers.

In Ciminelli, the Government alleged that by "rigging the [developer
requests] to favor their companies, defendants [including Ciminelli] deprived [the
government] of potentially valuable economic information." Ciminelli, 2023 WL
3356526 at 1.  While Ciminelli helped create a set of developer requests that made
Ciminelli's construction company qualify for preferred-developer status and
resulted in the company's award of a $750 million contract, the Government did
not allege that Ciminelli obtained property in the form of valuable contracts via
this fraud.  The Government alleged only that Ciminelli deprived Plaintiff of
economic information.  Ciminelli was thereby convicted for scheming to deprive a
victim of potentially valuable economic information necessary to make
discretionary economic decisions.  Id.  This conviction was overturned when the
Supreme Court found that withholding economic information was not a traditional
property interest that wire fraud reaches.  Id.  The Court did not address the merits
of any alternative theory of wire fraud the Government could have but did not
present in this case, for example whether obtaining contracts was a traditional
property interest.  (Id. at 1129.)  The only allegation in this case involved
withholding economic information.

19

Here, Baker misrepresented ArthoCare's financial condition and business practices to deprive victim-investors of their money by inducing them, fraudulently, to invest in ArthroCare.  Baker, 923 F.3d at 405.  The Government alleged Baker intended to deprive investors of money they would have otherwise had, not that Baker deprived the investors of potentially valuable economic information.  (Dkt. # 651 at 1.)  Because the Government alleged Baker sought to obtain money from the victims, not that he only withheld valuable economic information, Ciminelli does not apply to or alter Baker's conviction.  As previously discussed, ArthoCare's stock price "could not be fraudulently inflated without continued investment by investor-victims."  (Dkt. # 651 at 5.)  The victim-investors' money was inherently an object of Baker's fraud—he could not continue to reap the financial benefits of increased stock price for ArthroCare without inducing victim-investors to buy stock to continue to increase the stock price.  (Id.) Wresting the victim-investor's money from them was not an incidental byproduct of the scheme.  Baker did not merely withhold information.  He actively put out false information to induce further investment and thereby part investors from their money.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may only be issued if a movant "has

made a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c).  A movant is required to show that reasonable jurists could debate

whether the issues could have been resolved differently or are "adequate to deserve

encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 483 (2000).

Here, Baker has made no such showing.  Reasonable jurists could not

debate whether these issues could have been resolved differently.  Further, the

issues raised are not "adequate to deserve encouragement to proceed further."

Slack, 529 U.S. at 483.  Accordingly, the Court **DENIES** Baker a Certificate of

Appealability.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's

Report and Recommendation (Dkt. # 645), and **DENIES** Baker's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody (Dkts. # 628; 629).  The Court **DENIES** a certificate of appealability in

this case.

**IT IS SO ORDERED**.

**DATED**:  Austin, Texas, November 27, 2023.

_____

David Alan Ezra
Senior United States District Judge

21